# Kingsbury's Appeal.

### *Advancement, Proof of, by oral Testimony.*

1. Where, in a deed of land by a father to his son, the consideration expressed was natural love and affection, services rendered, and a bond for support during life; after the death of the grantor, on distribution of his estate, oral testimony is admissible to explain the attending circumstances of the conveyance, and that it was intended in part as an advancement.

2. Where there had been a prior deed, expressly as an advancement, but which, in fear of assailing creditors, had been cancelled, and a new deed given, in consideration of love and affection, services, and a bond for a life support, and the purpose of the new conveyance was shown by parol testimony, as also, that the intention of advancement was not abandoned; the admission of the evidence was not error, nor the finding of the advancement thereon.

3. Though the measure of advancement was doubtful, yet, where the value of the farm conveyed was treated as at least equal to one share of the estate, and there was no complaint on error that this was less than, or in excess of, the proper sum, a decree treating it as a full advancement will not be corrected on appeal, especially where no injustice is shown to have been done to the son, or to his heirs after his death.

Appeal from the Orphans' Court of *Erie county*.

This was an appeal by Samuel Kingsbury, guardian of the minor children of David A. McCord, deceased, from the decree of the Orphans' Court confirming the report of the auditor appointed to distribute the money in the hands of the administrators of John McCord, who was the father of David A. McCord, and grandfather of the wards of the appellant.

The case was this:—John McCord, the grandfather of the wards of the appellant, was in his lifetime seised in fee of three tracts of land. On the 22d day of December 1830, he conveyed one of said tracts, containing one hundred and eleven acres and ninety perches, to his son William H. McCord, at the price of $10 per acre, amounting to $1115.62. On the same day William gave his father the following receipt for the price, had his deed recorded, and took possession of the land, which he and his heirs have enjoyed ever since:—

"This is to certify whom it may concern, that whereas my honoured father, John McCord, Esq., hath executed a deed to me of equal date with this instrument, for one hundred and eleven acres and ninety perches of land, at $10 per acre, which I received of my said father as portion out of his estate, which I promise to account to him for as such, or to his executors or administrators. Given under my hand at North East, this twenty-second day of December, one thousand eight hundred and thirty.

"Wm. H. McCord.

"Attest, Mark Baldwin."

[Kingsbury's Appeal.]

In the latter part of the year 1837, or the beginning of 1838, John McCord was likely to become embarrassed in consequence of endorsing for other persons. Suits were commenced against him, and others were about to be commenced. On the 21st day of February 1838, he made a deed of another of his tracts of land, containing one hundred and seventeen acres and fifty-eight perches (being his homestead), to his son, David A. McCord—consideration $3500. On the same day David A. McCord gave his father a receipt or writing in the words following, to wit: "Be it known to all whom it may concern, that whereas my honoured father, John McCord, Esq., has this day executed a deed to me for one hundred and seventeen acres, fifty-eight perches of land, be the same more or less, for the consideration of $3500. Now, therefore, it is hereby agreed and understood, that I receive the same as part of his estate, and as such to account with my said father or his executors on the final settlement of the same. Witness my hand this 21st day .of February 1838."

This deed never was recorded, and was subsequently cancelled by cutting out the signatures of the grantors.

On the 1st day of March 1838, John McCord called upon the counsel he had retained to defend the suits instituted against him upon his endorsements, and exhibited to them the deed to his son David, and David's receipt to him, to ascertain if those writings, or such disposition of his property, would protect it from the alleged debts against him. He was informed by his counsel that it would not. On the 1st day of March 1838, John McCord and his wife executed another deed for the same land in the words following, to wit:

"This indenture, made the first day of March, in the year one thousand eight hundred and thirty-eight, between John McCord, of the township of North East, and county of Erie, and state of Pennsylvania, and Mary his wife, of the one part, and David A. McCord, of the same place, of the other part, witnesseth that the said John McCord and Mary his wife, for and in consideration of the natural love and affection felt by them for the said David A. McCord, their son, as well as of the services rendered to them by the said David A. McCord since his arrival at the age of twenty-one years, and of the said David A. McCord having entered into a bond of even date herewith, binding himself, his heirs, executors, and administrators, in the sum of $5000, to maintain and support the said John McCord and Mary his wife during their joint lives, and the survivor of them, as also for the further consideration of the sum of one dollar to them in hand paid by the said David A. McCord, at and before the ensealing and delivery of these presents, the receipt and payment whereof they do hereby acknowledge, and thereof acquit and for ever discharge the said David A. McCord, his heirs,

executors, and administrators, by these presents have granted, bargained, sold, aliened, enfeoffed, released, and confirmed, and by these presents do grant, bargain, sell, alien, enfeoff, release, and confirm unto the said David A. McCord and to his heirs and assigns for ever, all that certain piece or parcel of land situate in North East township aforesaid, being part of the same tract on which the said John McCord now resides, numbered in the original deed with the number 158, and bounded and described as follows, to wit (describing it), containing one hundred and seventeen acres and fifty-eight perches of land, with allowance of six per cent. for roads, &c., be the same more or less, together with all and singular the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, &c., &c. To have and to hold, &c., unto the said party of the second part, and to his heirs and assigns for ever. In witness whereof, &c."

This deed was recorded April 11th 1838. .

On the same day David gave his father a bond in the words following, to wit:—

"Know all men by these presents, that I, David A. McCord, of, &c., am held and firmly bound unto John McCord, of the same place, in the sum of $5000, lawful money of the United States, to be paid to the said John McCord, his certain attorney, &c., to which payment well and truly to be made, I do bind myself, my heirs, executors, and administrators, and every of them, firmly by these presents. Sealed, &c.

"Whereas the said John McCord and Mary his wife, by deed of indenture bearing even date herewith, have granted and confirmed unto the said David A. McCord a certain piece or parcel of land, situated in the township of North East aforesaid, containing one hundred and seventeen acres and fifty-eight perches, with the allowance of six per cent. for roads, &c., being part of the same tract upon which the said John McCord and Mary his wife now reside, the said David A. McCord having agreed to maintain them the said John McCord and Mary his wife (his father and mother) during their natural lives. Now, the condition of the above obligation is such, that if the above bounden David A. McCord, his executors, administrators, or assigns shall and do allow the said John McCord and Mary his wife, and the survivor of them, the sole and exclusive use of the west half of the mansion-house which they now occupy on the premises aforesaid, excepting the cellar, which is under the said west half of said house of which the said David A. McCord is to have the joint and equal use with the said John McCord and Mary his wife, and the survivor of them, with the necessary privileges and appurtenances, and shall and do well and sufficiently maintain and support and keep the said John McCord and Mary his wife during their natural lives and the life of the survivor of them,

[Kingsbury's Appeal.]

with good and sufficient meat, drink, apparel, washing, lodging, and attendance in sickness and in health, and shall and do provide and keep for them, and the survivor of them, sufficient firewood ready for the fire, as also a good riding-horse, with a one-horse wagon, and a suitable harness, and a milch cow, to be changed as often as need be, and feed and pasture the horse and cow in like manner with his own, and also shall and do well and truly pay or cause to be paid unto the said John McCord and Mary his wife, during their joint lives, the sum of $100 each and every year, to be paid quarterly in each and every year, the one-fourth on the first day of April, and the remaining fourths on the first days of July, October, and January in each and every year, and on the death of either the said John McCord or Mary his wife, then the one-half of the said sum of $100 to be paid in like manner to the survivor during the life of the said survivor; then the above obligation to be void, but if default shall be made in anything above stipulated, then this obligation to be and remain in full force and virtue. And further, I do hereby empower George A. Elliot, or any other attorney of any of the courts of record of this state, or elsewhere, to appear for me, and after one or more declarations filed for the above penalty, thereupon to confess judgment or judgments against me as of last, next, or any other subsequent term.

"Signed,            ."DAVID McCORD.    [L. S.]
"In the presence of MARK BALDWIN."

The following endorsements were on the bond:—

"Received on the above bond, February 5th 1852, the first one hundred dollars due on this bond, also one hundred and ninety-six dollars and thirty-eight cents, by the administrators of the estate of D. A. McCord.

"MARY McCORD.
"Witness, JAMES McCORD."

"Received also, February 5th 1852, on this bond, by the hands of administrator of estate of D. A. McCord, fifty dollars.
"MARY McCORD.
"Witness, JAMES McCORD."

"Received, North East, March 3d 1852, of the administrators of the estate of David A. McCord, on the within bond, three hundred and fifty-three dollars and sixty-two cents, being satisfaction in full for said bond up to April 1st 1851. I having relinquished, and do hereby release the said estate from all the interest due on said bond.            "MARY McCORD.
"Signed in the presence of JAMES McCORD."

"Received, North East, January 5th 1853, of the administra-

tors of estate of D. A. McCord, sixty-two dollars and fifty-two cents in full, on this bond.

"NANCY B. HALL,
"Executrix of Mary McCord, deceased."

John McCord and his wife occupied the part of the mansion-house designated in the bond which they were to occupy until his death in February 1839. His wife continued to live with David during her life, and was maintained and supported by David, who paid her the annuity of $50 per year, in accordance with. the terms of the bond. She died in 1852. David A. Mc-Cord became of age on the 29th February 1829, remained with his father, working on the farm, the same after as before he was of age, until 1st of March 1838.

John McCord died, leaving five children—two sons, William H. and David A., and three daughters. There were in the hands of the administrators of John McCord $4706.02 for distribution, and W. S. Lane, Esq., was appointed by the Orphans' Court for that purpose.

The auditor disregarded the deed and bond of the 1st of March 1838, but took the cancelled deed and David A. McCord's receipt of February 21st 1838, as the contract between John McCord and his son David; decided that David was advanced to the full amount of his share; and made distribution of the fund to the other four children of John McCord, to the exclusion of the children of David, whose interest the appellant represented.

To this report the following exceptions were filed :—

1. The auditor erred in the construction he gave to the deed of John McCord and wife to David A. McCord, bearing date March 1st 1838, and of the bond given by David A. McCord to John McCord, bearing even date with the same.

2. The auditor erred in declaring that David A. McCord was advanced by his father in his lifetime to the full share of David A. McCord, on his father's estate.

3. The auditor erred, in law, in the construction he gave to the deed and bond bearing date March 1st 1838, and given in evidence by the said Kingsbury.

4. The auditor erred in admitting the evidence of George A. Elliot and John H. Walker, Esqs., and the construction given to said parol evidence to alter and reform the deed and bond of the date of March 1st 1838.

5. The auditor erred in the distribution he made in refusing to distribute to the heirs of David A. McCord an equal one-fifth part of the entire fund in the hands of the administrators for distribution.

On the 23d of October 1862, after argument, the above ex-

ceptio'ns were aismissed, the report confirmed, and distribution decreed accordingly.

From that decree this appeal was taken by Samuel Kingsbury, who assigned in this court the following errors:—

1. The court below erred in dismissing the appellant's exceptions to the auditor's report, and in confirming said report.

2. The court below erred in affirming the auditor's report, and deciding that the parol evidence of Messrs. Elliott and Walker controlled the deed from John McCord to David A. McCord of the 1st of March 1838, and reinstated the cancelled deed of February 21st 1838, between the same parties.

3. The court erred in affirming the auditor's report, and deciding that David A. McCord was advanced in the lifetime of his father, to his full share of his father's estate.

4. The court erred in excluding the children of David A. McCord from one fifth part of the fund in court for distribution.

The case was argued in this court by *James C. Marshall*, for the appellant, and by *John H. Walker*, for appellee.

The opinion of the court was delivered, May 6th 1863, by

LOWRIE, C. J.—Part of the consideration specified in the conveyance by the father to the son, was natural love and affection, and therefore there is no difficulty in admitting oral testimony that it was intended in part as an advancement; for this testimony does not affect the conveyance, and an advancement may be proved by oral testimony. Is it proved here?

There is no doubt that the conveyance of the 21st February was intended to be an advancement to the amount of $3500, for we have the son's written acknowledgment of this. But that conveyance was cancelled, not because the whole transaction was abandoned, and the purpose of advancement given up, but because, in the form at first contemplated, it would be unavailing as against a threatening claim of a supposed creditor. There is no evidence that the intention of advancement was abandoned in the new arrangement and conveyance of 1st March. And the fact that this conveyance is for natural love and affection, and that the original acknowledgment of advancement was retained, while the original conveyance was cancelled on the giving of the new one, is evidence that the intention of advancement was retained; and this oral testimony, as well as the natural probabilities of the transaction, tends in the same direction. We cannot say that the court was wrong in finding an advancement.

What is the measure of advancement is not so clear. It is, however, treated as at least equal to one share of the estate, $1435.95, and it is not complained that this is too much or too little, if it was an advancement at all. It is not for us, therefore,

8 WR.—30

[Kingsbury's Appeal.]

to find fault with the amount. It does not seem to us that any injustice was done to the son or his heirs by treating it as a full advancement.

No doubt the threatening creditor would have avoided the whole transaction as a fraud upon him, if he had turned out to be a real creditor. But neither of the parties can set up that fraud as a means of escaping from the effect of the arrangement as between themselves.

Decree affirmed, at the costs of the appellants.